Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 538 | **DATE** | 10/23/01 |
| **CASE TITLE** | Reshard Jackson v. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants Matthew Howard's and Illinois Medi-Car's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons stated in the attached memorandum opinion and order, the Defendants' Motion for Summary Judgment [71-1] is GRANTED. **Any other pending motions are moot and terminated. This action is closed.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 2 4 2001 | |
| | Notified counsel by telephone. | date docketed | 98 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| mds(lc) | courtroom deputy's initials | 01 OCT 23 PM 4:19 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RESHARD JACKSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 538 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| ) | |
| CITY OF CHICAGO, OFFICER JOHN ) | |
| DuBOISE, OFFICER MARIA PEREZ, LT. ) | |
| POKOROVAC, SGT. KNEQEVIC, ) | |
| ILLINOIS MEDI-CAR, INC., and ) | |
| MATTHEW HOWARD ) | |
| ) | |
| Defendants ) | |

**DOCKETED**

OCT 2 4 2001

## MEMORANDUM OPINION AND ORDER

Reshard Jackson ("Jackson") brings a civil rights action pursuant to 42 U.S.C. §1983 ("§1983"), alleging that the City of Chicago, Officers DuBoise and Perez, Lt. Pokoravac, Sgt. Kneqevic, Illinois Medi-Car, Inc., and Matthew Howard improperly used excessive force in arresting Jackson, that they falsely arrested him, and that they unconstitutionally denied him medical care. Before this Court are defendant Illinois Medi-Car, Inc.'s ("Illinois Medi-Car") and defendant Matthew Howard's ("Howard") motion for summary judgment. For the reasons stated below, this Court GRANTS defendants' motion for summary judgment.

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of

material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. The non-movant cannot rest on the pleadings alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2515.

## II. Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts, with all inferences resolved in favor of Jackson.[1] Jackson is a 26 year old Chicago resident who has been confined to a wheelchair since he was 17 because his body is paralyzed from the chest down. Due to his paralysis, Jackson suffers from muscle spasms and takes a prescribed muscle relaxant, Baclofen.

Illinois Medi-Car is a private corporation that provides non-medical transportation to handicapped persons. Illinois Medi-Car transports people in its "medicars," which are vans that have been "hollowed out" and fitted with devices to secure and stabilize wheelchairs. Howard worked as a driver for Illinois Medi-Car for about one year from 1997 through August 1998. Illinois Medi-Car did not require, nor did Howard receive, medical training, as the job did not require him to provide medical care to passengers.

In 1995, Illinois Medi-Car entered into a one-year contract[2] with the City of Chicago, in which Illinois Medi-Car agreed to provide transportation to wheelchair-bound detainees. Illinois Medi-Car only takes patients and arrestees to pre-arranged destinations, from point "A" to point "B." Illinois Medi-Car drivers receive no special instructions on transporting arrestees as opposed to transporting persons not under arrest; the same procedures are used for both types of passengers. With the contract, the City provided Illinois Medi-Car with Chicago Police

---

[1]Since replies to Local Rule 56.1(b)(3)(A) responses are not permitted under Local Rule 56.1(a), this Court disregards Defendants' Local Rule 56.1(a)(3) Reply to Plaintiff's Response to Defendants' Statement of Facts.

[2]When the year expired, Illinois Medi-Car did not seek renewal of the contract, but both parties continued to operate under the terms of the contract. Mary Franco, the Illinois Medi-Car employee responsible for entering into the contract with the City, considered the terms still to be in effect through October 1998.

Department DSO 9506 ("DSO"), which outlined procedures to be followed by Illinois Medi-Car and the police department. According to the DSO, when an arrestee was in need of medical care, the police would contact the Chicago Fire Department and not Illinois Medi-Car. The DSO also required that a police officer be present in the transport vehicle when an arrestee was being transported. The reasons for requiring a police officer to accompany the arrestee are to ensure the safety of the driver, to prevent the arrestee from escaping, and to monitor the arrestee, as the driver has no authority over him or her. Under the contract, Illinois Medi-Car had no responsibility to provide medical care to arrestees under the contract, as it does not offer medical care to any of its passengers. It is Illinois Medi-Car's policy to require drivers to contact emergency medical care providers when a passenger develops a serious medical need; drivers may not know how to care for the patient or the best route to the nearest hospital.

On October 5, 1998, Jackson was arrested by Officers Perez and DuBoise of the Chicago Police Department. During the course of the arrest, Officer DuBoise choked and scratched Jackson. Officer DuBoise also disengaged the charging unit from Jackson's wheelchair and threw it against the wall, smashing it. After he was arrested, the officers dragged Jackson's wheelchair down the stairs with Jackson's hands cuffed to the small wheels on the front of the wheelchair, causing him additional pain and distress. Jackson was very upset and began crying.

While Jackson was waiting to be transported to the police station, his handcuffs were removed. During that time, Jackson ingested an entire bottle of his Baclofen pills, which amounted to approximately 114 tablets. Jackson cannot explain why he tried to hurt himself in this fashion; he says he was not himself at the time, he was in pain, and he was very angry, hurt, and frustrated by what had happened to him.

Howard was the Illinois Medi-Car driver who was dispatched to transport Jackson to the police station. He arrived at the scene thirty minutes to one hour after he received the dispatch call. Some time before Jackson was loaded into the medicar, Officer Perez found the empty Baclofen bottle and saw Jackson chewing the pills. Officer Perez asked Jackson how many pills he had taken, and he informed her that he had taken the entire bottle and needed to be taken to the hospital. Jackson made this statement in Howard's presence.[3] After making this statement, Jackson was loaded into the medicar. Officer Perez told Jackson that he was not going to be taken to the hospital, but that he would see the doctor at the County jail. Howard was present during this conversation as well. At that point, Jackson began crying to Howard to take him to the hospital. In Jackson's words, "that dude who was transporting me, I was crying to him . . . I [was] like, shit, I done took all them, damn, and started crying like, 'Man, take me to the doctor.'"

During the ride to the police station, Jackson was crying. He asked Howard to take him to the doctor, to which Howard replied that he was required to take Jackson to the police station as instructed by the police officers. Howard also told Jackson that he would be fine. When Howard refused to take Jackson to the hospital, Jackson told Howard to tell Jackson's mother that he was sorry, and that he did not mean to kill himself. He also told Howard that the reason why Jackson had done it was because the police brutality had greatly disturbed him.[4]

---

[3] While Jackson alleges that Howard was present when he communicated his need to go to the hospital to the officers, Illinois Medi-Car and Howard note that Jackson's testimony is inconsistent as to the time Jackson took his entire bottle of medication, as well as to what exactly he communicated to Howard on the way to the police station. In fact, Howard denies that Jackson ever indicated to him that he wanted to go to a hospital or needed medical attention. For the purposes of summary judgment, this Court resolves inferences in favor of Jackson.

[4] Jackson did not specifically articulate to Howard that he tried to kill himself, nor did he specifically tell Howard that the reason he tried to kill himself was because of the police brutality.

When Jackson was loaded into the medicar, and during the ride to the police station, he was sitting up straight with his eyes open and speaking in full sentences. Throughout the ride, Howard could observe Jackson sitting upright and breathing regularly. Jackson did not tell Howard he was in pain, and Howard did not think Jackson appeared to be in pain. Howard and Jackson were the only people in the medicar; a police officer did not accompany them inside.[5]

Upon arriving at the police station, Jackson appeared to be alert, and did not appear to be sick. Jackson was taken into the station and put in an interrogation room. Jackson began to feel dizzy after he arrived at the police station. He lost consciousness about five minutes after he entered the interrogation room. When Howard returned to the interrogation room, Jackson was now slumped forward with his head lying on the table and his eyes closed. Howard recalls seeing a pill bottle on the floor next to Jackson's wheelchair, but he could not see the label. He also stated that the pill bottle had not been on the floor before.

A Chicago police officer then called an ambulance and Jackson was taken to the hospital. Jackson experienced respiratory failure caused by a Baclofen overdose and he lapsed into a coma for three days. Due to the internal trauma resulting from the overdose, he was not discharged from the hospital until October 16, 1998, which was eleven days after his arrest. Howard was unaware that Jackson later had been taken to the hospital and that he had been in a coma.

---

Rather, Jackson's counsel has interpreted Jackson's testimony that way. Jackson's exact words were: "Man, like just tell my mama I said I ain't mean to do that shit, like I ain't mean to do it, but I was angry. I started telling him, say [that the] dude was up there choking me and shit, told the dude on the driver thing, like, he was choking me and just treating me and shit."

[5]During Jackson's transport to the police station, although a police officer did not ride with Jackson as stipulated in the contract between the City and Illinois Medi-Car, there were police escort vehicles driving in front of and behind the medicar.

Jackson has filed a three-count amended complaint under §1983 against the City of Chicago, Officers DuBoise and Perez, Lt. Pokoravac, Sgt. Kneqevic, Illinois Medi-Car, and Matthew Howard. Count I and III are §1983 claims brought against only the City of Chicago and the individual Chicago police officers and, therefore, are not relevant to the current motion for summary judgment. Count II is a §1983 claim against the Chicago police officers, Illinois Medi-Car, and Howard, alleging that the defendants violated Jackson's constitutional right to reasonable medical care and treatment. Specifically, Count II alleges that, because of Jackson's ingestion of his muscle relaxant pills, Jackson had an objectively serious medical need that was denied by defendants' objectively unreasonable conduct that they intentionally undertook with wilful indifference to Jackson's health and safety. Count II alleges that in transporting Jackson, Illinois Medi-Car and Howard were state actors, engaging in state action. Illinois Medi-Car and Howard now move for summary judgment. In their motion, Illinois Medi-Car and Howard argue that (1) summary judgment should be awarded in their favor because they are not state actors who were acting under color of state law when the incidents giving rise to this lawsuit occurred; (2) that even if they were state actors, they did not violate Jackson's constitutional rights; and (3) that even if they were state actors, and even if they did violate Jackson's constitutional rights, they are entitled to qualified immunity.

### III. Discussion

To properly state a claim under §1983, a plaintiff must allege facts sufficient to show that the defendants deprived him of a right or an interest secured by the Constitution or laws of the United States and that the defendants were acting under color of state law. Payne v. Churchich, 161 F.3d 1030, 1039 (7th Cir. 1998). In this case, it is not clear Illinois Medi-Car and Howard were state actors. For the purposes of this motion for summary judgment, however, this Court

assumes that they were state actors when they transported Jackson to the police station in the medicar, and addresses the merits. Thus, the crucial inquiry is whether these defendants deprived plaintiff of a right secured by the Constitution.

As a threshold matter, Jackson is claiming that he was deprived of his right to medical attention when he was a pretrial detainee. While in custody, the treatment of a pretrial detainee is governed by the Due Process Clause of the Fourteenth Amendment, and the protection afforded a pretrial detainee is at least as great as the protection a convicted prisoner is afforded under the Eighth Amendment. City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Higgins v. Correctional Medical Servs. of Illinois, 178 F.3d 508, 511 (7th Cir. 1999); Payne, 161 F.3d at 1040.

*1. Individual Liability*

Section 1983 creates a cause of action based on personal liability and predicated on fault; individuals thus are not liable under §1983 unless they caused or participated in the alleged constitutional deprivation. Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996); Castellano v. Chicago P.D., 129 F.Supp.2d. 1184 (N. D. Ill. 2001). The Seventh Circuit has applied the "deliberate indifference" standard to a pretrial detainee's §1983 claim. Payne, 161 F.3d at 1041. Tort law negligence, gross negligence, or recklessness does not meet the "deliberate indifference" standard; rather, the standard requires criminally reckless conduct, implying culpable knowledge by the offender. Salazar v. Chicago, 940 F.2d 233, 238 (7th Cir. 1991). Under this standard, a state actor violates the Fourteenth Amendment when he is deliberately indifferent to a substantial risk of serious harm to the pretrial detainee. Payne, 161 F.3d at 1041. A plaintiff establishes a §1983 claim by "demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps

to protect him from a known danger." Id.; see also Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997) (stating that "a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless); Estate of Cole v. Fromm, 94 F.3d 254, 259 (7th Cir. 1996) (requiring proof of "deliberate indifference" and rejecting proof merely of "negligent treatment").

In order to determine deliberate indifference, the court must examine a two-part test: (1) an objective component that examines whether the medical conditions was serious, and (2) a subjective component that examines whether the defendants were deliberately indifferent to that serious need. Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Garvin v. Armstrong, 263 F.3d 896, 898 (7th Cir. 2001). On a motion for summary judgment, eliminating just one prong will be fatal to the non-movant's defense. Therefore, to survive this motion for summary judgment, Jackson must show sufficient evidence to permit a reasonable jury to draw the inference that he had both a serious injury (or serious risk thereof), *and* that the defendants possessed the requisite state of mind of deliberate indifference.

*a. Serious medical need or condition*

Inattention to medical needs amounts to a constitutional violation only where the condition is serious. Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir. 1991). A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir. 1997); see also Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999). The Seventh Circuit has further defined a "serious" medical condition as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gutierrez, 111 F.3d at 1373.

Defendants argue that Jackson did not display an objectively serious medical need. They partially rely on Davis v. Jones, 936 F.2d 971, 972 (7th Cir. 1991), arguing that it stands for the proposition that the Constitution does not require that police obtain medical care for those in their custody whose injuries appear to be slight but turn out to be serious. Davis, however, stands for a lot more. In Davis, the defendant suffered a scraped elbow and a cut in his temple when he was arrested, and the police did not give him immediate medical attention. The Seventh Circuit considered whether the district court erred in instructing the jury that police must offer medical care to a pretrial detainee whenever "jail authorities have reason to suspect" that an injury is serious, regardless whether the problem later turns out to be serious. Id. It clarified its objective standard of official conduct, stating that:

> Police must respond to conditions they can observe. Just as the Constitution does not demand that police obtain medical care for prisoners whose injuries appear to be slight but turn out to be serious, so the officers must obtain medical care when the wound reasonably appears to be serious even if the risk turns out to have been small. Police can only act upon appearances; anything else is gambling with another person's life, a wager the Constitution does not permit arresting officers to undertake. Whether the injury is actually serious is a question best left to a physician.

Id.

Here, Jackson alleges—and this Court must accept as true—that Officer Perez saw Jackson's empty Baclofen bottle and saw him chewing pills. Jackson subsequently told the police officers that he had ingested his entire bottle of medication and that he needed to be taken to the hospital. Further, the police officers and Howard observed that Jackson was crying. Thus, contrary to the defendants' position, these facts could establish that Jackson's medical need was obvious and serious; that even to a lay person, someone who appears to have swallowed an entire bottle of medication would need medical attention.

*2. Deliberate Indifference*

Even if an issue of material fact exists as to whether Jackson displayed an objectively serious medical need, however, he does not survive summary judgment because he fails to satisfy the second prong of the test —that is, he cannot show that Illinois Medi-Car and Howard were deliberately indifferent to his serious medical need. In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court defined "deliberate indifference."[6] It articulated a "subjective recklessness" test, stating that a prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that the inmate faces a "substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. <u>Id.</u> at 837; see also <u>Estate of Cole v. Fromm</u>, 94 F.3d 254, 258-59 (7th Cir. 1996).

Thus, deliberate indifference consists of a knowledge element and a response element. As to knowledge, the official must both be subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. <u>Farmer</u>, 511 U.S. at 837. Additionally, as to the response element, the official must have acted with reckless disregard toward the serious medical need by "inaction or *woefully inadequate action.*" <u>Reed v. McBride</u>, 178 F.3d 849, 854 (7th Cir. 1999) (emphasis added) (quoting <u>Hudson v. McHugh</u>, 148 F.3d 859, 863 (7th Cir. 1998)). Even if officials are aware of a substantial risk of serious harm, they are not liable if "they responded reasonably to the risk, even if the harm was not ultimately averted." <u>Walker v. Peters</u>, 233 F.3d 494, 499 (7th Cir. 2000) (citation omitted). Arguments that an official did not comply with the objective standard of care will be of no avail to the complainant. <u>Farmer</u>, 511 U.S. at 838, ("[A]n official's failure to

---

[6] Defendants' counsel has misleadingly relied on <u>Salazar v. City of Chicago</u>, 940 F.2d 233, 238 (7th Cir. 1991), a case that antedated the Supreme Court's decision in <u>Farmer</u>. More than seven years later, every attorney who undertakes representation in this area of §1983 law ought to know that <u>Farmer</u> expressly rejected the intent-to-harm standard that had formed part of the <u>Salazar</u> formulation of deliberate indifference.

alleviate a significant risk that he *should have perceived* but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment.") (emphasis added).

With these principles of law in mind, this Court now examines Jackson's allegation that Howard and Illinois Medi-Car violated his rights under the Eighth Amendment by taking him to the police station to see a doctor as instructed by the police rather than taking him directly to a hospital. For this motion for summary judgment, the focus must be on whether Howard and/or Illinois Medi-Car, in particular, were subjectively aware of Jackson's serious medical need and if they recklessly disregarded that need.

At the outset, this Court emphasizes that Howard and Illinois Medi-Car, even though assumed state actors because they contracted with the City to provide transportation for handicapped arrestees, did not have the same role as police officers. Rather, as Jackson himself concedes, Illinois Medi-Car drivers do not exercise authority over arrestees — they do not carry guns or handcuffs and do not have the authority to arrest, detain, or search people. Moreover, drivers, like Howard, only take arrestees (and other patients) to pre-arranged destinations, from point "A" to point "B." Illinois Medi-Car was not responsible for providing medical care to arrestees under their contract with the City, as it does not offer medical care to any of its passengers. In fact, when an arrestee was in need of medical care, the police would contact the Chicago Fire Department and not Illinois Medi-Car.

Short of the bald assertion that Howard had knowledge of Jackson's serious medical need, Jackson has not proven that Howard had the requisite subjective knowledge for deliberate indifference. In fact, in his deposition testimony, Jackson acknowledges that he did not know whether Howard was aware that he had taken the pills. The evidence Jackson offers is that Howard was present when Jackson told Officer Perez that he had ingested his entire bottle of medication and that he needed to go to the hospital, that he asked Howard in the medicar to take him to a doctor, and that he asked Howard to tell his mother that he was sorry for what he had done. Howard, however, also heard Officer Perez tell Jackson that he would see a doctor at the police station. Further, Howard could observe Jackson through his rear view mirror, and saw

that Jackson was sitting upright and breathing regularly; Jackson never told Howard that he was in medical distress, nor did he appear to be in medical distress. Thus, while this evidence at most shows that Howard knew of Jackson's requests, it does not prove that Howard was subjectively aware that Jackson had a serious medical need.

Even if subjective knowledge could be inferred to Howard, Jackson cannot show that Howard acted with reckless disregard toward the serious medical need by "inaction or woefully inadequate action." Even after drawing inferences in favor of Jackson, as stated previously, Howard heard Officer Perez tell Jackson that he would see a doctor at the police station. Thus, Howard's driving Jackson to the police station was not inaction. It was not unreasonable for Howard, who was not medically trained and who arrived several minutes after Jackson allegedly had ingested the pills, to defer to the police officers' judgment and assessment of the situation and drive Jackson to the police station where Jackson would see a doctor. Further, because Jackson was sitting upright, breathing regularly, had his eyes open, and was speaking in full sentences, it is not unreasonable that Howard did not feel that Jackson had "developed" a serious medical condition while in route that would warrant his notifying the dispatcher. Thus, Howard's actions were not wholly inadequate to constitute deliberate indifference.

A case from the Second Circuit is worth reviewing as an example of wholly inadequate action in response to similar, albeit worse facts. In Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996), plaintiff Weyant was a severe diabetic who was arrested and placed in defendants Auberger's and Okst's police car for 30 minutes before he became very ill because he had not taken his required dosage of insulin. Id. at 849. Following his arrest, Weyant was pale, dizzy, perspiring profusely, trembling uncontrollably, hardly able to talk and he repeatedly lost consciousness. Id. at 857. Weyant's appearance was such that Auberger asked Weyant what was wrong. Id. at 849. Weyant told him that he was a diabetic, that he was overdue on his insulin and that he was in insulin shock. Id. Auberger said that he would take Weyant to a nearby hospital, and he began to drive Weyant to a nearby hospital, but Okst stopped him from doing so. Id. Okst, notwithstanding having been told that Weyant was a diabetic and having been told by Auberger that Weyant was

-13-

ill, instructed Auberger to take Weyant to the police barracks, not to a hospital. Id. At the barracks, the only care Weyant received was from Auberger who brought him water. Id. at 850.

In those circumstances, the Weyant court found that there was a triable issue of fact with respect to the deliberate indifference of the defendants. Id. at 857. And, that in Auberger's case, a jury could conclude that following Okst's instructions was not reasonable but reckless because Auberger had personally recognized that Weyant was in sufficiently poor physical condition. Id. Herein, the case facts, as described and discussed above are plainly dissimilar and in sharp contrast to the Weyant case facts. Unlike Auberger, Howard was not subjectively aware of Jackson's serious medical need, and following orders from the police in Howard's situation was not reckless, but reasonable.

## 2. *Official Liability*

Since §1983 does not support a claim based on respondent superior liability, Jackson would have to establish that Illinois Medi-Car directly violated Jackson's constitutional rights. Gossmeyer v. McDonald, 128 F.3d 481 (7th Cir. 1997); Iskander v. Village of Forrest Park, 690 F.2d 126 (7th Cir. 1982). The test to determine whether a private corporation acting under the color of state law violated a plaintiff's constitutional rights is the same test applied to municipal corporations. Iskander, 690 F.2d at 128. Specifically, to state a §1983 claim against individuals in their official capacities, a plaintiff must allege: (1) a deprivation of a constitutionally protected interest and (2) that the action alleged to be under color of law can be definitely linked to a governmental policy or custom. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). Because Jackson does not show his constitutional rights were violated, he does not satisfy the first prong, and therefore summary judgment is granted against Jackson on the official liability claim as well.

However, even if Jackson's constitutional rights were violated by the deprivation of medical attention that he alleges, to hold Illinois Medi-Car liable, Jackson must allege that Illinois Medi-Car's official policy or custom was the "moving force of the constitutional violation." Monell, 436 U.S. at 694; Iskander, 690 F.2d at 128. Jackson fourth amended

complaint fails to allege that any "official policy or custom" of Illinois Medi-Car was the "moving force" behind Howard's deprivation of Jackson's civil rights. In fact, in regard to Howard and Illinois Medi-Car, the complaint only states: "In transporting Plaintiff, Illinois Medi-Car and Howard were state actors, engaged in state action." Jackson's counsel attempts to dismiss this pleading deficiency by citing <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163 (1993), arguing that defendants were on notice of the claim and that they devote pages in their brief arguing that they do not have the requisite policy or practice. As the Seventh Circuit has pointed out, however, <u>Leatherman</u> is not the last word on the subject; the Supreme Court more recently addressed this kind of claim in <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397 (1997). See <u>Gustafson v. Jones</u>, 117 F.3d 1015 (7th Cir. 1997). In <u>Brown</u>, the Supreme Court held that a single hiring decision by a county sheriff was not enough to show that the County itself had a policy or custom that caused the plaintiff's injuries. <u>Brown</u>, 520 U.S. at 1388. The plaintiff must show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights." <u>Id.</u>

Like the plaintiff in <u>Brown</u>, Jackson at most has only alleged the single incident when it transported Jackson to base its claim that Illinois Medi-Car has a policy or custom that caused Jackson's injuries. Further, this was Jackson's fourth amended complaint. That the defendants defended its policy does not remedy Jackson's deficiency; Jackson has not shown the requisite causal link between Illinois Medi-Car policy and the deprivation of federal rights. Therefore, even if Jackson did suffer a constitutional deprivation, he does not survive summary judgment against the defendants in their official capacities either.

Finally, because this Court is granting summary judgment in defendants' favor, it need not address their qualified immunity claim.

## IV. Conclusion

For the foregoing reasons, this Court GRANTS defendants' motions for summary judgment.

**Enter:**

_____
David H. Coar
**United States District Judge**

**Dated: October 23, 2001**